# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-2150
Filed March 11, 2026

————————————

**In the Interest of O.R. and A.L., Minor Children,**

**B.L., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Jasper County,
The Honorable Steven J. Holwerda, Judge.

————————————

**AFFIRMED**

————————————

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, attorney for
appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Ling Harl of Harl Law PLLC, Ankeny, attorney and guardian ad litem for
minor children.

————————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Ahlers, P.J.

**AHLERS, Presiding Judge.**

The juvenile court terminated a mother's parental rights to her two children. The court also terminated the parental rights of the father of the older child. But it did not terminate the parental rights of the father of the younger child, as he has custody of that child. Only the mother appeals. She challenges the grounds for termination, the finding that termination was in the best interests of the children, and the court's refusal to give her more time to work toward reunification.

## I.     Standard and Scope of Review

We review termination of parental rights cases de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). We give respectful consideration to the juvenile court's factual findings, especially when assessing witness credibility, but we are not bound by its findings. *Id.*

We follow a three-step process of review by determining: (1) whether a statutory ground for termination has been established; (2) whether termination is in the children's best interests; and (3) whether a permissive exception should be applied to avoid termination. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). We do not address any steps not challenged by a parent. *Id.* After addressing all challenged steps, we address any additional challenges raised by a parent. *Id.*

## II.     Statutory Grounds

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (e), (f), and (h) (2025).[1] Though the court

_____

[1] The court terminated the mother's parental rights to the older child under paragraph (f) and to the younger child under paragraph (h).

terminated the mother's rights on multiple grounds, we affirm if any ground is supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to focus on grounds under paragraphs (f) and (h).

Paragraphs (f) and (h) are similar. Both require the children to be previously adjudicated as in need of assistance and the court to find they could not be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(2), (f)(4), (h)(2), (h)(4). They differ only as to the age of the child at issue and the length of time the child has been removed from the parent's custody. Paragraph (f) applies to a child four years of age or older who has been removed from a parent's custody for twelve of the last eighteen months, whereas paragraph (h) applies to a child three years of age or younger who has been removed from a parent's custody for six of the last twelve months. *Compare id.* § 232.116(1)(f)(1), (f)(3), *with id.* § 232.116(1)(h)(1), (h)(3).

There is no dispute that the children have been adjudicated as children in need of assistance, the older child (age six) has been out of the mother's custody for over fifteen consecutive months, and the younger child (age eleven months) has been out of the mother's custody for nearly eight months. The mother challenges only the court's finding that the children could not be returned to her custody at the time of the termination hearing. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "at the present time" as used in section 232.116(1)(h)(4) to mean at the time of the termination hearing); *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) (same as to "at the present time" as used in section 232.116(1)(f)(4)). She claims the children can be returned to her custody because she is able to care for them after her medications were adjusted.

Following our de novo review, we find clear and convincing evidence that the children could not be returned to their mother's custody at the time of the hearing. The mother's mental-health issues significantly interfere with her ability to provide adequate care for the children. She disassociates or zones out when providing care. She forgets appointments, ignores or does not notice when her children need her, forgets to feed the children, and fails to call them after promising to do so. The mother was in and out of hospitals for her mental health multiple times during the six months leading to the termination hearing. Two hospitalizations occurred after the mother was found disoriented, lost, and wandering.

Even assuming, as the mother argues, that her mental health will be better given her new medications, the children cannot be safely returned to her custody. Even when the mother's mental health was at its best, she still relied on others to care for the children. *See In re A.M.*, No. 01-0832, 2002 WL 985524, at *4 (Iowa Ct. App. May 15, 2002) (affirming termination despite periods of stability between mental breaks, in part because the mother could not provide a stable environment even when she was healthy). The older child's caregivers reported they had to watch the child most of the time because the mother could not handle her. While the mother was living at a facility for the purpose of developing better parenting skills, staff noted she left much of the parenting responsibility with them. And, when she did participate, the care she provided was often unsatisfactory. Additionally, her mental-health symptoms worsen with increased stress, and the rigors of parenting have caused such stress to the mother. Finally, the effectiveness of new medication depends on the mother remembering to take it, which she struggles to do consistently. The juvenile court assessed the situation this way:

> The mother's ability to care for her children is obviously affected by her mental health needs. The same mental health problems that were present in the summer of 2024 . . . were still present in September 2025 . . . . She is on her medications but is not engaged with therapy. In the past fifteen months, she has never had both children in her care at the same time and has never been able to parent even one of the children on her own. She has never progressed beyond supervised visits, even when her mental health was at its best, and has never demonstrated the ability to care for her children on her own, even when her mental health was at its best and even while in the structured environment [of the facility at which the mother resided in an effort to improve her parenting skills].

We agree with this assessment following our de novo review.

Given these circumstances, we agree with the juvenile court that the children cannot be safely returned to the mother's custody, and statutory grounds for terminating the mother's parental rights under paragraphs (f) and (h) were established.

## III. Best Interests

The mother also claims termination of her parental rights is not in the children's best interests. Again, she argues she can care for the children given her new medication.

When determining whether termination is in the children's best interests we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *In re W.M.*, 957 N.W.2d 305, 313–14 (Iowa 2021). Once the State proves a ground for termination under section 232.116(1) "we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *W.M.*, 957 N.W.2d at 314 (citation omitted).

As discussed, the children cannot be safely returned to the mother's custody because she cannot provide consistent and adequate care. The record indicates her mental-health issues are a recurring obstacle to her caring for the children. Additionally, she has not had a stable job since the juvenile court got involved in this case.

In contrast, the family members with whom the children reside have provided suitable care for the children, and each child is thriving under that care. The older child is doing well in school, is involved in extracurricular activities, and only seems to regress when a visit with her mother does not go well or her mother fails to call her after promising to do so. The family members caring for her intend to adopt. *See* Iowa Code § 232.116(2)(b) (permitting consideration of a foster family's ability and willingness "to permanently integrate the child into the foster family" as a factor in determining a child's best interests).

The younger child has similarly thrived under her father's care. She is healthy and has formed an attachment to her father. The caregivers for both children are willing to continue to care for them and ensure that the siblings maintain contact with one another.

We will not continue to deprive these children of permanency in the hope the mother's newest medication will allow her to provide them with a stable and safe home. *See W.M.*, 957 N.W.2d at 314. Based on the mother's past inability to care for the children and the care the children are receiving now, we find termination of the mother's parental rights to be in the children's best interests.

## IV.    Additional Time

For her final issue, the mother contends she should be granted an extension of time to work toward reunification.[2]  She claims that with her new medication she can achieve reunification if she is given more time.

We are permitted to give a parent additional time to work toward reunification.  *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order under section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of granting an additional six months).  But to exercise this option, we must be able to identify "specific factors, conditions, or expected behavioral changes" that provide a basis for determining "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  *Id.* § 232.104(2)(b).  We cannot identify any such factors, conditions, or expected behavioral changes here.

On this issue, the juvenile court assessed the situation as follows:

> The court cannot think of any reasonable factors or conditions which will allow the court at this time [to] make a determination that the need for removal will no longer exist in six months.  The realities of the past fifteen months do not permit such a determination.  At the time of the [termination] hearing, [the older child] had been removed from the mother for fifteen months and [the younger child] for eight months.  Yet, despite being given that much time to improve herself and her situation, she is no closer to being self-sufficient and no closer to having the ability to parent than she was when the children were removed.  She is still without a job and without transportation, and largely dependent on others for her own care. She continues to struggle with her mental health, is not engaged with therapy, and was hospitalized for her mental health issues as recently as

---

[2] Although the mother did not raise this issue under a separate heading or include any legal authority to support it, we assume without deciding that the issue was adequately raised to invoke appellate review.

two months before the hearing. Even when her mental health has been at its best in this case, she has not demonstrated the ability to care for even one of the children on her own. Visits are still supervised and not close to changing. . . . Given the lack of progress in the past fifteen months, an additional six months will not eliminate the need for continued removal.

We agree with this assessment. Although we share the mother's hope that her medication change will lead to positive change for her, given her history of mental-health struggles and her inability to care for the children even when she is at her best, we cannot find that the need for removal will be eliminated in the next six months. Accordingly, we decline to grant the mother additional time to work toward reunification.

## V.    Conclusion

For the reasons stated, we reject each of the mother's challenges. We affirm the juvenile court's decision to terminate the mother's parental rights to both children.

**AFFIRMED.**

8